UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINEAR GROUP SERVICES, LLC

                    Plaintiff,                    Case No. 13-10108
                                                  Hon. Gershwin A. Drain
v.

ATTICA AUTOMATION, INC.,

                    Defendant,

v.

ND INDUSTRIES, INC.,

                    Counter-Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
PRECLUDE MONETARY DAMAGES [#72], GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT
[#77], GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [#78], GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO STRIKE THE SECOND DECLARATION OF
JAMES DEFILLIPI [#98], DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE
SUPPLEMENTAL AUTHORITY [#110], AND DENYING PLAINTIFF'S MOTION FOR
RULE 11 SANCTIONS [#112]**

## I.   INTRODUCTION

Plaintiff, Linear Group Services, LLC ("Linear"), filed the instant Complaint against

Defendant, Attica Automation, Inc. ("Attica"), on January 11, 2013, seeking a declaration

that its sorting machine does not infringe on Attica's U.S. Patent No. 6,787,724 ("the

Patent"), or that the Patent is invalid. Presently before the Court is Linear's Motion and Brief

to Preclude Monetary Damages [#72], filed on March 17, 2014; Linear's Motion for

Summary Judgment of Noninfringement [#77], filed on March 25, 2014;  Attica's Motion for

Partial Summary Judgment [#78], filed on March 25, 2014; Attica's Motion to Strike the Second Declaration of James DeFillipi [#98], filed on May 19, 2014; Attica's Motion for Leave to File Supplemental Authority [#110], filed on June 23, 2014; and Linear's Motion for Rule 11 Sanctions [#112], filed on June 26, 2014.

Attica filed a Response to Linear's Motion and Brief to Preclude Monetary Damages on March 24, 2014, and Linear filed a Reply on April 3, 2014. Attica filed a Response to Linear's Motion for Summary Judgment of Noninfringement on April 17, 2014, Linear filed a Reply on May 5, 2014, and a sur-reply on May 28, 2014. Linear filed a Response to Attica's Motion for Partial Summary Judgment on April 18, 2014, and Attica filed a Reply on May 5, 2014. Additionally, Linear filed a Supplement to the Summary Judgment Record Based on Now-Completed Attica Deposition, pursuant to Leave of the Court, on June 9, 2014. Attica filed a Brief in Response to Linear's Supplement to the Summary Judgment Record on June 16, 2014.

Attica's Motion to Strike the Second Declaration of James DeFillipi is fully briefed. Linear filed a Response on June 5, 2014, and Attica filed a Reply on June 16, 2014. Additionally, Linear filed a Response to Attica's Motion for Leave to File Supplemental Authority on June 24, 2014, and Attica filed a Response to Linear's Motion for Rule 11 Sanctions on July 7, 2014.

Based on the facts below, the Court will grant in part and deny in part Linear's Motion and Brief to Preclude Monetary Damages, grant in part and deny in part Linear's Motion for Summary Judgment of Noninfringment, grant in part and deny in part Attica's Motion for Partial Summary Judgment, grant in part and deny in part Attica's Motion to Strike the Second Declaration of James DeFillipi, deny Attica's Motion for Leave to File

2

Supplemental Authority, and deny Linear's Motion for Rule 11 Sanctions.

## II.   FACTUAL BACKGROUND

On September 7, 2004, Attica was granted U.S. Patent No. 6,787,724 (the "Patent") for a sorting machine, which is used during the manufacturing of mass quantities of fasteners such as bolts and screws with the purpose of segregating or removing nonconforming fasteners from the batch of conforming fasteners. The abstract of the Patent states:

> A sorting machine receives a bulk of workpieces or fasteners from a hopper unit into a feed station which align the fasteners into a single file for engagement to a transport system of an inspection station. Preferably, the transport system has a conveyor belt with a magnetic member disposed radially inward from the belts. The fasteners are preferably ferrous and thereby engage the conveyor belt via the magnetic field which penetrates the belt. The fasteners are thus carried along the transport system past a trigger sensor which sends a signal to a central controller to timely actuate a dimensional sensing apparatus which takes an image of the fastener and sends it to the central computer for dimensional analysis. If the fastener fails to meet pre-established guidelines the nonconforming fastener is ejected from the transport system via a reject mechanism. If the fastener conforms, it continues to move along the transport system, past a counter sensor and is then dropped off the conveyor belt of the transport system into a packaging station for ultimate delivery to the customer.

On January 11, 2013, Linear filed the present action against Attica, seeking a declaration that Linear's technology does not infringe on the Patent, or, in the alternative, a declaration that the Patent is invalid. On February 28, 2013, Attica brought a counterclaim against Linear and N.D. Industries, Inc. ("N.D.") for direct and indirect infringement of its Patent.

On February 12, 2014, the Court issued an Order and Opinion Regarding Claim Construction. *See* Dkt. No. 60. The Court declined to adopt Linear's proposed constructions for the Patent's disputed terms and concluded that all of the disputed terms: (1) "a feed station having a distribution assembly and a best drive system," (2) "reject mechanism,"

3

and (3) "wherein the central controller receives a dimension signal from the sensing apparatus and activates the reject mechanism to remove the respective one of the plurality of workpieces from the transport system if the respective one of the plurality of workpieces in nonconforming," would be given their ordinary and customary meanings.

## III.   LEGAL ANALYSIS

### A.   Plaintiff's Motion and Brief to Preclude Monetary Damages

#### 1.   Standard of Review

FED. R. CIV. P. 26(a)(1)(A)(iii) requires that a party's disclosures contain a computation of all damages together with a disclosure of supporting documentation. FED. R. CIV. P. 26(e) requires a party to supplement both its disclosures and discovery responses in a timely manner. The failure to make proper disclosures or the failure to make proper supplementation results in preclusion, unless the failure is "substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The preclusion is "automatic and mandatory." *Eiben v. Gorilla Ladder Co.*, No. 11-CV-10298, 2013 U.S. Dist. LEXIS 59961, *18 (E.D. Mich. April 22, 2013) (quoting *Dickenson v. Cardiax & Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976 (6th Cir. 2004)). The automatic and mandatory preclusion applies to claims for monetary damages. *Consol. Rail Corp. v. Grand Trunk W.R.R. Co.*, 853 F. Supp. 2d 666, 671 (E.D. Mich. 2012).

The burden of establishing justification or harmlessness for the lack of supplementation is on the party who failed to make proper disclosure. *Id.* That party, however, may not use supplementation under FED. R. CIV. P. 26(e) as a license to justify manifestly incomplete disclosures. *Eiben*, No. 11-CV-10298 at *20.

4

## 2.   Attica's Failure to Disclose

Linear argues that Attica's claim for monetary damages should be precluded because Attica cannot meet its burden of establishing justification or harmlessness for its lack of disclosure. *Id.* at *18. Linear alleges that Attica has failed to disclose since May 2013, and the disclosures it has made contain no calculation of monetary damages or supporting documentation. Prior to the close of discovery on February 24, 2014, Linear maintains that Attica never supplemented any of its disclosures or discovery responses regarding damages, nor did it make any damage calculation or information known to Linear. Consequently, Linear argues that Attica's complete failure to make the proper disclosures is harmful, as Linear has had no fair opportunity to conduct damages discovery. *Spencer v. Peters*, No. C11-5424 BHS, 2012 U.S. Dist. LEXIS 179586, *5 (W.D. Wash. Dec. 18, 2012). Therefore, Linear moves that Attica be precluded from collecting any monetary damages.

Alternatively, Attica argues that it supplemented its discovery responses with respect to damages on February 24, 2014, and subsequently served copies to Linear's counsel by email and first class mail. Attica's supplementary response stated that:

> [u]pon information and belief, based on a reasonable investigation (and not only any confidential financial data of Linear or ND), a reasonable royalty of 20% of sales of (I) the Linear infringing sorting machines and (ii) collateral unpatented items, is sought by Attica Automation. As to ND, because ND has not disclosed in discovery its cost structure for the revenue it has obtained by infringing use of the Linear sorting machines, all revenue shall be treated as profit.

*See* Dkt. No. 75. Attica's supplement is consistent with the notice of damages it gave in its Initial Disclosures stating that it would seek a "reasonable royalty." A more precise amount could not be computed at the time as no damages discovery had yet been conducted.

5

Linear's claim of prejudice in its ability to conduct comprehensive discovery due to Attica's untimeliness is disingenuous. In its July 31, 2013 Order, this Court entered that reasonable royalty damages must be awarded to a successful patent infringement complainant as a matter of law under 35 U.S.C § 284. *See* Dkt. No. 32. Therefore, Linear cannot claim it was unaware of a potential award of reasonable royalty damages if infringement is proven. Any failure of Linear to prepare for perspective damages during the course of discovery is its own fault. This includes Linear's choice not to depose Attica regarding damages. Attica filed its supplemental response one week before Linear's scheduled FED. R. CIV. P. 30(b)(6) deposition of Attica on March 3, 2014. However, Linear's counsel terminated the deposition after 15 minutes, without asking a single question about damages.

Furthermore, any harm Linear suffered from Attica's delayed disclosures is minimized by the fact that Linear possesses the primary evidence that Attica will rely on to support a reasonable royalty calculation - Linear's profit projections for infringing sales. While Attica could have made a timely claim by considering evidence under its control to establish a hypothetical negotiation under *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)[1], a patentee may also calculate reasonable royalties by taking an analytical approach and focusing on the profit projections for infringing sales. While Attica eventually established the *Georgia-Pacific* factors in its February 24, 2014 supplemental response, it indicates it only did so out of respect for the discovery deadline.

---

[1] The factors considered in *Georgia-Pacific* to establish a hypothetical negotiation setting include royalties received by the patentee for licensing, rates paid by licenses for the use of other comparable patents, nature and scope of the license, and the duration of the patient and term of the license.

Attica was precluded from calculating damages under its preferred method, the analytical approach, because the only witness able to answer questions regarding profit projections at the time Linear's infringement began was not deposed until after discovery had closed.

Prior to the close of discovery, Attica argues it made diligent efforts to obtain all of the information it needed to calculate a reasonable royalty. However, Linear refused to respond to interrogatories regarding reasonable royalty damages. On May 8, 2014, Magistrate Judge Mona K. Majzoub issued an Order granting Attica's Motion to Compel [#62] and requiring Linear to provide full and complete responses to Interrogatory No. 11 and Request for Production No. 19.[2] *See* Dkt. No. 96. Linear opposed Attica's Motion to Compel on the same basis presently asserted - that Attica did not submit any damages computation.

Finally, in its Initial Disclosures, Attica stated, "as presently informed, Attica Automation intends to seek a reasonable royalty damages for Linear AG's and ND Industries' infringement, and may seek lost profits." *See* Dkt. No. 72-2 at 4. However, Attica has not provided any information as to its lost profits.

Therefore, the Court will grant Linear's Motion to preclude Attica from collecting monetary damages for lost profits, and deny Linear's Motion to preclude Attica from seeking reasonable royalty damages.

**B.    Defendant's Motion to Strike the Second Declaration of James DeFillipi**

---

[2] Linear Interrogatory No. 11 and Linear Document Request No. 19 both relate to Attica's claimed damages.

James DeFillipi ("DeFillipi") is the engineering manager for ND and the director of operations for Linear. DeFillipi was first deposed on December 4, 2013 as Linear's FED. R. CIV. P. 26(a)(2)(A) representative on the factual basis for Linear's invalidity defenses. In his original deposition, DeFillipi noted that he could not testify as to the level of ordinary skill in the art at the time of the invention of the Patent. Following DeFillipi's declaration, Linear's counsel stipulated on the record that all grounds of invalidity were contained in its Invalidity Contentions. However, the contentions do not state what would have been the level of ordinary skill in the art or provide any reason for combining any of the three prior art references mentioned in the contentions. Furthermore, DeFillipi was never disclosed by Linear as a person who would be presenting FED. R. EVID. 702 opinion testimony, or as an expert witness in Linear's January 27, 2014 Witness List. Fact and expert discovery closed on February 24, 2014.

On April 17, 2014, DeFillipi executed a second declaration. DeFillipi's second declaration is a complete turn-around of Linear's obviousness invalidity position. Attica alleges it was improperly ambushed by the second DeFillipi declaration which arrived post-discovery and contains positions and opinions that DeFillipi never disclosed in the discovery term. Attica further argues that DeFillipi's second declaration should be excluded because Linear failed to disclose DeFillipi pursuant to FED. R. CIV. P. 26(a)(2)(A) as a person who would be presenting FED. R. EVID. 702 opinion evidence, Linear violated the Case Management Order which required its Invalidity Contentions to be submitted by July 15, 2013, and because DeFillipi's second declaration completely contradicts his original testimony on validity.

FED. R. CIV. P. 26(a)(2)(A) generally requires parties to make mandatory disclosures

8

about their experts. FED. R. CIV. P. 37(c)(1) requires absolute compliance with FED. R. CIV. P. 26(a) in that it "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Vance v. United States*, No. 98-5488, 1999 WL 455435, *3 (6th Cir. June 25, 1999). FED. R. CIV. P. 37(c) allows the district court to exclude from trial information that was in violation of FED. R. CIV. P. 26(a) or (e).

The facts of the instant matter are analogous to those in *Hilgraeve Corp. v. McAfee Associates, Inc.*, 70 F. Supp. 2d 738, 755 (E.D. Mich. 1999), *vacated-in-part, affirmed-in-part and remanded*, 224 F.3d 1349 (Fed. Cir. 2000), where District Judge Edmunds excluded the expert declaration of John Hile, presented in opposition to a summary judgment motion. Judge Edmunds recognized the declaration as a "backdoor" attempt to admit evidence that should have been submitted under FED. R. EVID. 702. Hile was one of the inventors of the patent-in-suit and his declaration was not preceded by any expert disclosure under FED. R. CIV. P. 26(a)(2)(A), or expert report under FED. R. CIV. P. 26(a)(2)(B). Judge Edmunds rationale for excluding Hile's expert declaration stated:

> Experts typically do as Mr. Hile has done here, tie observations to conclusions through the use of specialized knowledge or experience...because Mr. Hile's conclusions are based on his technical or specialized knowledge, to be admitted and considered as evidence, he should have been disclosed as an expert. This was not done, and the Court will not permit Hilgraeve to use Rule 701 as a back door to admit evidence that it should have sought to have admitted under Rule 702.

*Hilgraeve*, 70 F. Supp. 2d at 755.

Even if the Court were to find Linear's failure to comply with FED. R. CIV. P. 26(a) "harmless," DeFillipi's second declaration could also be stricken for Linear's failure to comply with a FED. R. CIV. P. 16 scheduling order. Under FED. R. CIV. P. 16, district courts

9

have "broad discretion to enforce their scheduling orders" and a "wide latitude to impose sanctions for failure to comply with their scheduling orders." *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 752-53 (6th Cir. 2003) (citation omitted).

Finally, the significant contradiction between DeFillipi's deposition testimony on invalidity and the proffered declaration is another ground to strike it. "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Linear specifically asserts that the Patent is invalid because prior art renders the claims at issue obvious and offered DeFillipi as its FED. R. CIV. P. 30(b)(6) designee for examination on its affirmative defense of invalidity. Whether prior art renders a claim obvious is determined from the perspective of one of ordinary skill in the art, one of four factors a court must examine. *Star Scientific, Inc. v. RJ Reynolds Tobacco Co.,* 655 F.3d 1364, 1374 (Fed. Cir. 2011). A movant claiming obviousness invalidity based on a combination of references has a threshold burden of proving that a person of ordinary skill in the relevant field had a reason to combine the references in the manner claimed. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1367 (Fed. Cir. 2012).

In his original deposition, DeFillipi did not have an opinion on obviousness invalidity or the level of ordinary skill in the art. Consequently, Attica was hindered from further questioning DeFillipi as to Linear's invalidity defenses. It would be improper for this Court to permit Linear to deliberately frustrate Attica's efforts to ascertain the bases of its invalidity defense and then proffer a post-discovery makeover of its invalidity case via a declaration offering opinions never previously disclosed and in direct contradiction to DeFillipi's prior testimony.

10

However, in its Motion to Strike, Attica does not contend that the noninfringment portion of DeFillipi's second declaration was somehow improper. Instead, Attica focuses only on the invalidity portion. Therefore, based on the facts above, the Court will strike the invalidity portion of DeFillipi's second declaration, however, it will deny Attica's Motion to Strike as to the infringement portion, paragraph three, of the second declaration.

### C.    Defendant's Motion for Leave to File Supplemental Authority

Attica moved to supplement its Motion to Strike with this Court's June 18, 2014 ruling in *Everlight Electronics Co., Ltd. v. Nichia Corp.*, No. 12-cv-11758. The Court will deny Defendant's Motion.

### D.    Plaintiff's Motion for Summary Judgment of Noninfringement

Only claim 1 of the Patent is at issue in this case. Claim 1 states, in the relevant part:

> wherein the central controller receives a dimensional signal from the sensing apparatus and activates the reject mechanism to remove the respective one of the plurality of workpieces from the transport system if the respective one of the plurality of workpieces is nonconforming.

(Col. 8, Lines 4-9). The Court has ruled that the terms in claim 1 should be given their ordinary and customary meaning. *See* Dkt. No. 60.

### 1.    Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an

11

integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the defendant; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 2.    Literal Infringement

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Tech., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed. Cir. 1995). Linear argues its machine does not infringe on the Patent because not every limitation in claim 1 is present in its sorting machine. In support, Linear points to the infringement portion of the second declaration of DeFillipi. DeFillipi explains that unlike the Patent, the accused Linear machine does not remove a nonconforming or defective workpiece from the transport system by a central controller activating a reject mechanism. Instead, in the Linear machine, a controller activates an air nozzle to remove a conforming workpiece from the transport system. The nonconforming workpieces continue to be

12

transported to the end of the line where they eventually fall off, rather than being removed by a controller activating a reject mechanism.

However, Linear is attempting to raise an argument this Court has heard and denied twice before. In both claim construction and in responding to Linear's Motion for Reconsideration, this Court considered and rebuffed Linear's argument that "nonconforming" should be construed to mean "defective." *See* Dkts. No. 60 and 69. In its proposed claim construction, Linear asked the Court to remove the term "nonconforming" and substitute it with "defective or malformed." *See* Dkt. No. 42. Linear argued that "defective or malformed" clarified "non-conforming" in the claim and that "[w]hen the claim recites removing the 'non-conforming' workpieces, it means that the removed workpieces are those that are defective or malformed, such that the remaining workpieces are non-defective or properly formed." *See* Dkt. No. 49. The Court rejected Linear's proposed construction and found that Linear offered no valid grounds to construe the unambiguous terms. There is no substantive difference in Linear's current argument and its argument this Court dismissed in claim construction.

Furthermore, Linear's argument incorrectly relies on the presumption that "nonconforming" always means "defective" in the context of the sorting function of the Patent. This interpretation directly contradicts the language of the Patent which indicates that "defective" and "nonconforming" are not synonymous, by stating that the "machine inspects and segregates non-conforming or defective workpieces from conforming workpieces which meet pre-established dimensional guidelines." (emphasis added). Attica maintains that the sorting function of claim 1 may be applied in order to separate different types of parts, none of which are "defective." For example, if there were a mixed batch of

13

4" and 6" nails that had no defects but needed to be sorted by size, the dimensions of one or the other would be programmed through the controller as "nonconforming," triggering segregation of the different sized parts.

> There are two steps under a literal infringement analysis:
>
> First, the asserted claims must be interpreted by the court as a matter of law to determine their meaning and scope. In the second step, the trier of fact determines whether the claims as thus construed read on the accused product.

*Southwall*, 54 F.3d at 1575 (internal citations omitted). In the instant case, the Court has determined that "non-conforming" should be given its ordinary and customary meaning. However, as to the application of the claims "as thus construed read on the accused product," Linear has not shown the absence of a genuine issue of material fact as to whether its machine "removes non-conforming pieces." *Id*.

### 3.     Doctrine of Equivalents

Under the Doctrine of Equivalents ("DOE") "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson, Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950)). Like literal infringement, infringement under the DOE is an issue of fact. *Southwall*, 54 F.3d at 1575. Linear argues the DOE is not relevant in the instant case because Attica made no claim for, or disclosure of, alleged infringement under the DOE in its pleadings or during discovery, and because the DOE is barred as a matter of law.

14

### a.   Potential Claims or Disclosures Under the DOE

The DOE is not mentioned in Attica's counterclaim or Infringement Contentions, nor is any DOE evidence presented in response to Linear's discovery requests. Under these circumstances, the Court typically precludes reliance on the DOE. *See Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 U.S. Dist. LEXIS 72223, \*13, \*17 (E.D. Mich. Aug. 17, 2009) (The patentees did not plead a DOE theory in their complaint, did not amend their complaint to include a DOE theory, and did not disclose a DOE theory in their answers to the accused infringer's interrogatories, and were thus precluded from pursuing a DOE theory at trial).

Alternatively, Attica maintains that it did not waive its ability to bring an argument under the DOE. Instead, the theory became moot when the Court rejected Linear's only defense to Attica's claim of literal infringement. According to Attica, if the Court revisits its claim construction ruling, the doctrine may have renewed relevance and Attica cannot be deemed to have waived an argument under the DOE. *See Exxon Chem. Patents, Inc. v. The Lubrizol Corp.,* 137 F.3d 1475, 1478-79 (Fed. Cir. 1998) ("Exxon cannot be charged with having abandoned its doctrine-of-equivalents theory of liability by not submitting it to the jury or raising it on the previous appeal. Once the district judge construed the claim language in Exxon's favor, the doctrine-of-equivalents issue in the case became moot"). In its answer to Linear's discovery request, Attica indicated that it would modify its infringement contentions under the DOE if necessary after the Court's ruling on the claim construction:

> **INTERROGATORY NO 8** State all facts on which you base any contention of infringement of the patent by plaintiff under the doctrine of equivalents.

15

**RESPONSE:**
Defendant objects to Interrogatory No. 8 on the grounds that it is premature. Defendant will provide infringement contentions in accordance with the schedule set by the Court in the Case Management Order, and modify those contentions, if necessary to refer to the Doctrine of Equivalents, following the Court's claim construction.

*See* Dkt. No. 77. Following the Court's claim construction ruling in its favor, Attica supplemented its discovery response to note that the DOE was rendered moot.

Attica maintains that there is a question of fact as to whether Linear infringes under the DOE. "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *Absolute Software, Inc. v. Stealth Signal, Inc.,* 659 F.3d 1121, 1139 (Fed. Cir. 2011) (citing *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005)). "An element of an accused product is equivalent to a claim limitation if the difference between the two are insubstantial, a question that turns on whether the element of the accused product 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Absolute*, 659 F.3d at 1139-40 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). Attica argues that the Linear machine literally infringes upon claim 1 of the Patent because any difference between the two machines is insubstantial and every limitation is present in the accused machine. However, Attica has not presented any evidence or conducted any discovery to support such an allegation.

### b.    DOE Barred as a Matter of Law

Linear further argues that Attica is barred from relying on the DOE as a matter of law. The DOE must be applied on a limitation-by-limitation basis, but Federal Circuit Court

16

precedence prohibits use of the DOE to encompass the opposite of a claim limitation. In some cases, the Federal Court has recognized the "all elements" rule and "claim vitiation," under which the opposite of a claim limitation cannot be the equivalent because a contrary conclusion would vitiate the limitation and violate the rule that the DOE must be applied to each claim limitation, not to the invention as a whole. *Asyst Tech., Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed. Cir. 2005) (An "unmounted" computer was determined to be unequal to a claim limitation requiring a "mounted" computer); *see also Planet Bingo LLC v. GameTech Int'l, Inc.,* 472 F.3d 1338, 1344-45 (Fed. Cir. 2006) (The court held that it could not substitute "after" and "before...without ignoring entirely the claim limitation"); *see also Bicon, Inc. v. The Straumann Co.,* 441 F.3d 945, 955 (Fed. Cir. 2006) (A trumpet-shaped surface characterized as "concave" is not equivalent to a frusto-spherical basal surface known as "convex," because such a finding "would be at odds with the claim limitation requiring that the basal surface portion of the abutment be frusto-spherical in shape).

In the instant case, claim 1 identifies a structure that removes "nonconforming" workpieces. Linear maintains that its machine does the exact opposite by removing conforming pieces. Furthermore, Linear argues that Attica could have included "removing conforming workpieces" in the language of the Patent, but instead it specifically claimed only removing nonconforming workpieces.

However, in *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013), the Federal Circuit Court explained that the test of claim vitiation is not whether a claim element is literally missing, but whether those of skill in the art would regard two elements as interchangeable.

[V]itiation applies when one of skill in the art would understand that the literal and

17

> substitute limitations are not interchangeable, not insubstantially different, and when they do not perform substantially the same function in substantially the same way, to accomplish substantially the same result.

*Id.* The Federal Circuit explained in *Brilliant* that claim vitiation "has its clearest application 'where the accused device contain[s] the antithesis of the claimed structure.'" *Id.* While Attica argues that there is no evidence that a person of skill in the art would regard the distinction between conforming and nonconforming pieces to be substantial or a distinction at all, Linear maintains that its machine contains the antithesis of the "nonconfomring" claim limitation - thus establishing a clear case of claim vitiation.

Given Attica's statement that the DOE is moot and the lack of discovery conducted on the matter, the Court will grant Linear's Motion for Summary Judgment as to the DOE.

**E.     Defendant's Motion for Partial Summary Judgment**

**1.     Attica Established a Prima Facie Case of Infringement**

To prove patent infringement, Attica bears the burden of proof to show the presence of every element or its equivalent in the accused device. *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985). A patent is presumed valid and the burden of proving invalidity is on the patent challenger. 35 U.S.C § 282. Attica bases its argument of patent infringement primarily on the testimony of Bennett and his observation of Linear's machine in operation, and gathers further support of evidentiary correlation from the Linear video. While Linear maintains its machine differs from the Patent because it lacks: (1) a feed station having a belt drive system; (2) a reject mechanism (that removes nonconforming pieces); and (3) a central controller which activates the reject mechanism, Attica alleges these limitations are missing from the Linear machine only when the Patent claims are

18

interpreted as Linear proposes. However, the Court did not adopt Linear's proposed claim instructions in its Claim Construction Order. *See* Dkt. No. 60.

Linear, in alignment with its Motion for Summary Judgment [#77], maintains that its machine lacks the literal infringement necessary to establish a patent violation. In support, Linear relies on DeFillipi's second declaration, which explains in further detail how and why the accused machine lacks the claim 1 limitation of activating the reject mechanism and further lists that each asserted claim is found in a prior art. Next, Linear argues that neither the photographs of its machine nor the video screenshots depict a reject mechanism being activated to remove a nonconforming part from the transport system. Instead, the images show the opposite - the removal of a conforming part from the conveyor belt.

Linear attempts to refute Bennett's declaration by arguing that it is a conclusory statement that may not be relied on for a grant of summary judgment. Linear further alleges that Bennett, like Attica, improperly relies on the Preliminary Infringement Contentions in reaching his conclusions. According to Linear, the Contentions are out-of court hearsay documents that cannot be relied on in a motion for summary judgment. *Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000) ("a party may not rely on inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment"); *see also  Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed. Cir. 1989) (quoting *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1141 (Fed. Cir. 1986)) ("General assertions of fact issues, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden").

Finally, in its Court approved sur-reply, Linear presents the declaration of Larry Wright ("Wright"), who wrote the source code for the Programmable Logic Controller of the

19

Linear machine. Wright maintains that although Attica tries to read Linear's Machine Program Logic Controller ("PLC") code as saying that the machine is instructed to blow off a part when a fault is detected, "fault" actually only appears in the cited document in reference to preconditions that must exist in order for a conforming part to be blown off. In his declaration, Wright asserts that it should not matter if the Linear machine can remove nonconforming pieces because it is currently not programmed to do so, therefore it is programmed not to infringe.[3]

### 2.   Linear's Noninfringement Position

Attica argues its Motion for Summary Judgment should be granted given Linear's noninfringement position. When Attica asked Linear to detail why its machine did not infringe on the Patent, Linear responded that while many of the limitations of claim 1 were present in the accused machine, three were not. As previously addressed, Attica maintains that the accused machine lacks those three limitations only if the claim is construed as Linear proposed. The Court did not adopt Linear's proposed construction, thus Attica alleges Linear's only grounds for contesting the infringement have been removed.

However, Linear maintains that claim content does not necessarily end with the initial claim construction ruling. While the Court has currently recognized that the claims in question should be given their ordinary and customary meaning, Attica has not yet presented any evidence as to what that "ordinary and customary" meaning is.

### 3.   Linear Fails to Prove Invalidity of Claim 1 for Anticipation and Obviousness Invalidity

---

[3] Linear filed its Motion for Sanctions [#112] in response to Attica's interpretation of "fault" in Linear's PLC code.

Linear raises two invalidity contentions[4] - anticipation and/or obviousness, arguing that claim 1 is invalid because its elements are anticipated and/or obvious. 35 U.S.C §§ 102 and 103. Attica argues summary judgment should be granted in its favor because Linear has failed to prove any invalidity of claim 1.

### a.    Standard of Review

An issued patent "is presumed valid." 35 U.S.C § 282. "This presumption [of validity] can be overcome only by clear and convincing evidence to the contrary." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1320 (Fed. Cir. 2011). To raise an anticipation invalidity defense, Linear must show by clear and convincing evidence, not just a preponderance of the evidence, that all of the limitations of claim 1 of the Patent are described in a single prior art reference and arranged as in the claim. 35 U.S.C § 102 (a-b); *Cheese Sys., Inc. v. Tetra Pak Cheese and Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013). "Whether a claim is invalid for obviousness is determined from the perspective of one of ordinary skill in the art." *Cheese*, 725 F.3d at 1352. "Even when all claim limitations are found in prior art references, the fact-finder must determine what the prior art teaches, whether prior art teaches away from the claimed invention, and whether there was a motivation to combine teachings from separate references." *Id.*

### b.    Anticipation Invalidity

Patent law requires "that an invention do something new or novel." *Messerschmidt v. U.S.*, 29 Fed. Cl. 1, 20 (1993). The novelty requirement under 35 U.S.C § 102(a) "requires invention within the United States before anticipation by prior art or reference."

---

[4] In a patent infringement case, the alleged infringer of a patent may desire to show that the patent-in-suit is invalid or unenforceable via invalidity contentions.

21

*Messerschmidt*, 29 Cl. at 20. Patent invalidity may be established when it can be shown that the invention was known or used by others before it was invented by the patentee. Linear cites three prior art references: the Dragotta '323 patent ("Dragotta"), the Okano publication ("Okano"), and the Wallace *et al* '568 patent ("Wallace").

Attica argues none of the prior art references cited by Linear anticipate claim 1 of the Patent under the § 102 standard. Dragotta is a device for inspecting medicinal tablets for defects on their side surfaces. Unlike claim 1, Dragotta lacks a belt drive system, a variable speed transport system, a trigger sensor that sends a signal to a dimensional sensing apparatus, and a central control that receives a dimensional signal to activate a reject mechanism. Okano lacks a central controller, and any type of programmable logic device that responds to a signal from a trigger sensor. Wallace, a device for selectively coating threaded and/or unthreaded surfaces or fasteners, differs from claim 1 in that it performs no inspection function at all. Linear does not offer any arguments in opposition to Attica's request for Summary Judgment on this matter, essentially conceding the aforementioned differences, by failing to address it in its Response brief.

### c.    Obviousness Invalidity

35 U.S.C. § 103 states:

> A patent for a claimed invention may not be obtained...if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.

Attica argues that Linear has not provided any evidence to show the level of ordinary skill and knowledge in the pertinent art at the time of the invention of claim 1. The only witness Linear has presented, DeFillipi, specifically took no stance on this issue at his first

22

deposition. Because the Court has granted Attica's Motion to Strike the Second Declaration of DeFillipi as to its invalidity portion, Linear is left with a substantial hole in its defense.

Attica further argues that Linear has failed to show why a person of ordinary skill would combine the cited references to arrive at the invention covered by claim 1. Whether an invention was obvious at the time a subsequent invention was made is a question of law based on several factual inquires commonly referred to as the "*Graham* factors." *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). The *Graham* factors that must be considered are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claim at issue; (3) the level of ordinary skill in the pertinent art; and (4) relevant secondary objective evidence of nonobviousness. Linear has made no showing that a person of ordinary skill in the relevant field had a reason to combine the references to arrive at the invention covered by claim 1 of the Patent (the third *Graham* factor). *KRS Int's v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

"The issue of obviousness may be decided on motion for summary judgment when the underlying facts are not in dispute, or when the movant must prevail even if disputed facts and inferences therefrom are resolved in favor of the non-movant." *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1385 (Fed. Cir. 2001). Linear's current claim of obviousness based on a combination of prior art references is untimely. At no point during discovery did Linear ever disclose the proposed combinations that it is now asserting, nor has it ever disclosed why a person of ordinary skill in the art would combine the cited references as Linear does. In discovery, Attica specifically requested Linear  disclose "the specific combinations of prior art that You are relying on, and all reasons You contend that a person of ordinary skill in the art would have had to make those combinations." Linear

23

promised Attica that it would respond in its invalidity contentions, but it did not. "If a party fails to provide information...as required by Rule 26(a) or (e), the party is not allowed to use that information...to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c).

Alternatively, Linear maintains that inspection and sorting machines were not a new concept when the Patent was filed. However, Attica's combinations of prior art rely heavily on the stricken portions of DeFillipi's second declaration.

The Court will deny Attica's Motion for Summary Judgment as to the claim of infringement by Linear, but grant the Motion on Linear's claim of invalidity.

## F.    Plaintiff's Motion for Rule 11 Sanctions [#112]

In Attica's Reply Brief to its Motion for Partial Summary Judgment, Attica asserts that the PLC code for Linear's machine indicates that the machine is instructed to blow off a part when a FAULT is detected. Attica uses the PLC language as evidence that Linear admits that its machine has the ability to, and in fact does, perform the exact same function in the same manner as the Patent limitation at issue (separating "conforming" and "nonconforming" parts). *See* Dkt. No. 93 at 2. Linear immediately filed a Motion to File a Sur-Reply based on new evidence submitted, alleging this was the first time that Attica referred to Linear's PLC code. The Court granted Linear's Motion.

In its sur-reply, Linear argues that "FAULT" does not refer to the nature of the part being blown off, but to the status of the air pressure in the air nozzle and to the status of the part sensor. Linear maintains that it is only when those faults are absent that a conforming part is blown off. Linear now alleges that Attica's representation of the Linear

24

machine is completely baseless and Attica should be sanctioned.[5]

Linear maintains that sanctions are appropriate because Attica has no evidence to support its misrepresentation of "FAULT" and because Attica only made the allegations to increase Linear's burdens and expenses. However, it is not apparent that Linear has suffered any prejudice from Attica's argument, particularly given the fact that this Court permitted Linear to file a sur-reply. The imposition of sanctions under Rule 11 is a matter of judicial discretion. FED. R. CIV. P. 11; *see also Steinberg v. Nationwide Mut. Ins. Co.*, 418 F. Supp. 2d 215 (E.D. N.Y. 2006). The "primary principle in imposing sanctions is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons. *Kirschner v. Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 159 F.R.D. 391, 395 (E.D. N.Y. 1995); *see* FED. R. CIV. P. 11(c)(2). In the instant case, ordering Rule 11 sanctions onto Attica would be an overly harsh response.

Accordingly, the Court will deny Linear's Motion for Sanctions.

## IV.    CONCLUSION

Based on the facts and conclusions above, the Court will GRANT IN PART AND DENY IN PART Linear's Motion and Brief to Preclude Monetary Damages [#72], GRANT IN PART AND DENY IN PART Linear's Motion for Summary Judgment of Noninfringement [#77], GRANT IN PART AND DENY IN PART Attica's Motion for Partial Summary Judgment [#78], GRANT IN PART AND DENY IN PART Attica's Motion to Strike the Second Declaration of James DeFillipi [#98], DENY Attica's Motion for Leave to File

---

[5] Linear afforded Attica the 21-day grace period under Rule 11 for Attica to withdraw or correct its misrepresentation. Attica refused to do so.

Supplemental Authority [#110], and DENY Linear's Motion for Sanctions [#112].

     SO ORDERED.

Dated: July 11, 2014           /s/Gershwin A Drain
                             GERSHWIN A. DRAIN
                             UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 11, 2014, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk

26