UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINEAR GROUP SERVICES, LLC,

        Plaintiff,

                                 Case No. 13-10108
vs.                           HON. GERSHWIN A. DRAIN

ATTICA AUTOMATION, INC.,

        Defendant,

        vs.

ND INDUSTRIES, INC.,

        Counter-Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART ATTICA'S MOTIONS *IN LIMINE* [#119], DENYING LINEAR'S MOTION *IN LIMINE* TO PRECLUDE WILLIAM BENNETT'S TESTIMONY REGARDING REASONABLE ROYALTY DAMAGES [#120], GRANTING ATTICA'S MOTION TO REALIGN THE PARTIES [#121], AND DENYING LINEAR'S MOTION FOR PARTIAL RECONSIDERATION [#122]**

**I.**    **INTRODUCTION**

Presently before the Court are Defendant's, Attica Automation, Inc. ("Attica"), Motions *in Limine* (Nos. 1-11) [#119], filed on July 22, 2014; Plaintiff's, Linear Group Services, LLC ("Linear"), Motion *in Limine* to Preclude William Bennett's Testimony Regarding Reasonable Royalty Damages [#120], filed on July 22, 2014; Attica's Motion to Realign the Parties [#121], filed on July 24, 2014; and Linear's Motion for Partial Reconsideration [#122], filed on July 25, 2014. A hearing on the matter was held on August 19, 2014.

Linear filed a Response to Attica's Motions *in Limine* on August 7, 2014, and Attica

filed a Reply on August 11, 2014. Attica filed a Response to Linear's Motion *in Limine* on July 30, 2014, and Linear filed a Reply on August 7, 2014. Finally, Attica filed a Response to Linear's Motion to Realign the Parties on August 7, 2014.

Based on the facts below, the Court will grant in part and deny in part Attica's Motions *in Limine* (Nos. 1-11) [#119], deny Linear's Motion *in Limine* to Preclude William Bennett's Testimony Regarding Reasonable Royalty Damages [#120], grant Attica's Motion to Realign the Parties [#121], and deny Linear's Motion for Partial Reconsideration [#122].

## II.   FACTUAL BACKGROUND

On September 7, 2004, Attica was granted U.S. Patent No. 6,787,724 (the "Patent") for a sorting machine, which is used during the manufacturing of mass quantities of fasteners such as bolts and screws with the purpose of segregating or removing nonconforming fasteners from the batch of conforming fasteners. The abstract of the Patent states:

> A sorting machine receives a bulk of workpieces or fasteners from a hopper unit into a feed station which align the fasteners into a single file for engagement to a transport system of an inspection station. Preferably, the transport system has a conveyor belt with a magnetic member disposed radially inward from the belts. The fasteners are preferably ferrous and thereby engage the conveyor belt via the magnetic field which penetrates the belt. The fasteners are thus carried along the transport system past a trigger sensor which sends a signal to a central controller to timely actuate a dimensional sensing apparatus which takes an image of the fastener and sends it to the central computer for dimensional analysis. If the fastener fails to meet pre-established guidelines the nonconforming fastener is ejected from the transport system via a reject mechanism. If the fastener conforms, it continues to move along the transport system, past a counter sensor and is then dropped off the conveyor belt of the transport system into a packaging station for ultimate delivery to the customer.

On January 11, 2013, Linear filed the present action against Attica, seeking a declaration that Linear's technology does not infringe on the Patent, or, in the alternative, a declaration

that the Patent is invalid. On February 28, 2013, Attica brought a counterclaim against Linear and N.D. Industries, Inc. ("N.D.") for direct and indirect infringement of its Patent.

On February 12, 2014, the Court issued an Order and Opinion Regarding Claim Construction. *See* Dkt. No. 60. The Court declined to adopt Linear's proposed constructions for the Patent's disputed terms and concluded that all of the disputed terms: (1) "a feed station having a distribution assembly and a best drive system," (2) "reject mechanism," and (3) "wherein the central controller receives a dimension signal from the sensing apparatus and activates the reject mechanism to remove the respective one of the plurality of workpieces from the transport system if the respective one of the plurality of workpieces in nonconforming," would be given their ordinary and customary meanings.

## III.   LEGAL ANALYSIS

### A.   Attica's Motions *in Limine*

#### 1.   Preclude the Testimony of James DeFillipi

Attica's first Motion *in Limine* moves to preclude James DeFillipi ("DeFillipi") from testifying or otherwise sponsoring evidence concerning the computer program code used in the Linear sorting machines. At his deposition, DeFillipi testified that he was not proficient with the source code (computer program) controlling the operation of the Linear sorting machines. Consequently, Attica argues that DeFillipi lacks personal knowledge and should be prevented from offering an opinion or other testimony on the matter. FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

However, while DeFillipi did not personally write the source code, he testified that, in designing the Linear machine, he had to have programming skills and a thorough understanding of the logic of the relevant source code. Consequently, DeFillipi is very familiar with the functioning of the code and how the Linear machine operates.

The Court will deny Attica's Motion and permit DeFillipi to offer testimony concerning the source code for the Linear machine at trial. If Attica contends that DeFillipi disclaimed knowledge regarding the source code at his deposition, then Attica may introduce the deposition at trial to impeach DeFillipi under FED. R. EVID. 613(b), Extrinsic Evidence of a Prior Inconsistent Statement. However, DeFillipi's prior statements would go to the weight of his testimony, not admissibility.

### 2. Preclude Linear from Raising Additional Grounds of Non-Infringement

Attica's second Motion *in Limine* moves to preclude Linear from raising grounds of non-infringement other than or in addition to those raised in Linear's response to Attica's Interrogatory No. 4 and in Linear's Rule 30(b)(6) deposition of non-infringement. Under FED. R. CIV. P. 26(e), "[a] party who has made a disclosure under Rule 26(a)–or who has responded to an interrogatory, request for production, or request for admission–must supplement or correct its disclosure or response" in a timely manner. In response to Attica's interrogatory request that Linear define the grounds for its claim of non-infringement, Linear cited only three claim limitations. Linear argues its machine lacks: (1) a "feed station having...a belt drive system...," (2) a "reject mechanism," and (3) a central controller which "activates the reject mechanism." DeFillipi's testimony confirmed that the aforementioned claims were Linear's sole grounds for non-infringement.

4

Therefore, Attica argues that Linear has waived any additional grounds for its claim of non-infringement by failing to disclose them during discovery. FED. R. CIV. P. 37(c) ("If a party fails to provide information...as required by Rule 26(a) or (e), the party is not allowed to use that information...to supply evidence on a motion, at a hearing or at a trial, unless failure was substantially justified or harmless."). Linear has indicated that it does not intend to raise any additional challenges. The Court will grant Attica's Motion to Preclude Linear from Raising Additional Grounds of Non-Infringement.

### 3. Preclude Linear from Arguing Additional Claim Constructions

Attica's third Motion *in Limine* seeks to preclude Linear from arguing claim construction different from or at variance with the Court's construction in the *Markman* Order of February 12, 2014. *See* Dkt. No. 60. Attica argues that under the law of case doctrine, "[i]ssues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (citing *Coal Res., Inc. v. Gulf & W. Ind.,* 865 F.2d 761, 766, opinion amended on denial of reh'g, 877 F.2d 5 (6th Cir. 1989); *see also Andersen Corp. v. Giber Composites, LLC,* 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007) ("The district court's claim construction was...law of the case for purposes of the trial...[I]t would have been pointless (and futile) for [Defendant's] counsel to remind the district court at trial that [Defendant] adhered to its position that the court's construction...was incorrect.").

The "law of the case" doctrine prevents a court from reconsidering identical issues unless: (1) "substantially different evidence is raised on a subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Coal Res.*, 865 F.2d at

767; *see Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004) ("Although a court may depart from the law of the case doctrine in 'exceptional cases,' such departures are rare."). Therefore, Attica maintains that Linear is bound by the Court's prior rejection of Linear's proposed claim constructions.

Alternatively, Linear alleges that the law of case doctrine does not apply to claim construction. Instead, "district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315 (Fed. Cir. 2010) (citing *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005)); *see also Wonderland NurseryGoods Co., Ltd. v. Thorley Indus., LLC,* 988 F. Supp. 2d 479, 500 (W.D. Penn. 2013) ("Even after a trial has begun, a trial judge may learn more about the technology during the trial that necessitates some clarification of claim terms before the jury deliberates.") (omitting internal citations). However, any disputes regarding the proper scope of claim constructions must be resolved by the court, not the jury. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

It appears as though Linear is anticipating again attempting to raise an argument this Court has heard and denied three times. During claim construction, in response to Linear's Motion for Reconsideration, and in Linear's Motion for Summary Judgment of Noninfringement, this Court has considered and rebuffed Linear's argument that "nonconforming" should be construed to mean "defective." *See* Dkt. Nos. 60, 69, and 118. While the Court has yet to define the "ordinary meaning" of any disputed claim term, the Court will grant Attica's Motion and recognize the law of case doctrine. As this case has

6

progressed, the Court has had numerous opportunities to re-evaluate its understanding of sorting machine technology and has continued to stand by its original interpretation. Unless a need for clarification arises, Linear will be prevented from raising additional claim constructions.

### 4.    Preclude Linear from Presenting Opinion Testimony

Attica's fourth Motion *in Limine* seeks to preclude Linear from presenting opinion testimony on the quality of Attica's products and company reputation on the basis of irrelevancy. FED. R. EVID. 401 states that evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." "Irrelevant evidence is not admissible," FED. R. EVID. 402, and relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of...unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Expert opinion testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Attica argues that the quality of the parties' respective sorting machines and company reputations is irrelevant to any litigable issue of fact or law in this case.

However, the quality of Attica's commercial embodiment and its machine's reputation may be directly relevant to determining reasonable royalty damages. 35 U.S.C. § 284 governs the award of damages for patent infringement. It provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

*Id.* The Federal Circuit court has made it clear that there is more than one acceptable

method for determining reasonable royalty damages. Instead, the court has recognized three primary approaches for reaching a proper calculation: "[1] an established royalty, [2] the infringer's profit projects for infringing sales, or [3] a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 116, 120 (S.D. N.Y. 1970)." *Wordtech Sys. v. Integrated Networks Solutions*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). The *Georgia-Pacific* approach evaluates numerous factors in an attempt "to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."[1] *Id.* (quoting *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).

While Linear is correct in identifying that the quality of Attica's products and the company's reputation would be taken into consideration under the *Georgia-Pacific* Hypothetical Negotiation approach, Attica, the patentee, has stated that it intends to establish damages via the analytical method. The analytical method focuses on the infringer's projections of profits or the infringing product, regardless of what the parties might have hypothetically agreed to had they successfully negotiated before the infringement began. *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986) (describing the analytical method as "subtract[ing] the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices").

---

[1] There are fifteen *Georgia-Pacific* factors. Not all may be applicable in a given case. These factors include: the opinion testimony of qualified experts, the duration of the patent and term of the license, the commercial relationship between the licensor and licensee, the licensor's established policy and marketing program to maintain its patent monopoly, and the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

The Court will grant Attica's Motion *in Limine* to preclude Linear from presenting opinion testimony on the quality of Attica's products and Attica's company reputation.

### 5. Preclude Linear from Presenting Evidence of Commercial Embodiment

Attica's fifth Motion *in Limine* requests that the Court preclude Linear from presenting evidence on the commercial embodiment of Attica's patented sorting machines. Attica maintains that "[i]nfringment, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with a properly and previously construed claims in suit." *SRI Int'l v. Matsushita Electric Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). While Linear is again correct in asserting that commercial embodiment would be an element for consideration of reasonably royalty damages under the *Georgia-Pacific* factors, Attica will be using the analytical approach. Therefore, the Court will prevent Linear from presenting evidence of the commercial embodiment of Attica's patented sorting machines as to a consideration of damages.

### 6. Preclude Linear for Attacking the Validity of Attica's Patent

Attica's sixth Motion *in Limine* seeks to preclude Linear from collaterally attacking the validity of the Patent. On July 11, 2014, this Court entered an Order dismissing on summary judgment Linear's challenge to the validity of claim 1 of the Patent on the grounds of anticipation or obviousness. *See* Dkt. No. 118. In its present Response, Linear incorrectly states that the Court dismissed its invalidity claim "purely on procedural grounds, without at all addressing the merits of invalidity." *See* Dkt. No. 126. The Court dismissed Linear's claim for a declaratory judgment of invalidity for failure of proof. *See* Dkt. No. 118.

9

Under *Bard Peripheral Vascular v. WL Gore & Assoc.*, 682 F.3d 1003 (Fed. Cir. 2012), the court held that to establish willful infringement, a patentee must (1)"show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and, if the first prong is met (2) "demonstrate that this objective-defined risk...was either known or so obvious that it should have been known to the accused infringer." *Id.* at 1005.

Linear attempts to rely on *Bard*, by stating that "[e]vidence of invalidity is thus relevant because it bears on whether 'a reasonable person would have considered there would be a high likelihood of infringement of a valid patent.'" *Id.* at 1005. However, Linear's citation of *Bard*, takes the court's analysis out of context and misrepresents the court's ruling. Linear's selective *Bard* quote improperly suggests that under the first, objective prong of the willfulness analysis, the validity of the Patent remains an open question for the jury. However, in the same passage that Linear's quote is drawn from, the *Bard* court stated that "the ultimate legal question of whether *a reasonable person would have considered there to be a high likelihood of infringement of a valid patent* should always be decided as a matter of law by the judge." *Id.* at 1008 (Linear's selective citation indicated by emphasis).

In the instant case, this Court has already found on summary judgment that there are no genuine issues of material fact as to Linear's claim of invalidity. *See* Dkt. No. 118. The Court will grant Attica's Motion to preclude Linear from re-litigating the validity of the Patent at trial.

### 7.  Preclude Linear from Relying on Advice of Counsel in Defense

Attica's seventh Motion *in Limine* requests that the Court preclude Linear from

relying on advice of counsel in defense of Attica's willful infringement claim. FED. R. CIV. P. 26(e) requires a party to supplement discovery responses. Thus far, Linear has withheld all advice of counsel documents on assertion of attorney-client privilege. Under FED. R. CIV. P. 37(c), "[i]f a party fails to provide information...as required by Rule 26(a) or (e), the party is not allowed to use that information...to supply evidence on a motion, at a hearing or at a trial, unless failure was substantially justified or harmless." Consequently, although Linear maintains that it does not intend to rely on any advice of counsel documents, it has waived the use of any such evidence in support at trial. The Court will grant Attica's Motion *in Limine* to preclude Linear form relying on advice of counsel documents in defense of Attica's willful infringement claim.

### 8.    Preclude Evidence of Steps to Avoid Infringement

Attica's eighth Motion *in Limine* requests that the Court preclude Linear from presenting evidence showing that it took steps to avoid infringement upon learning of the Patent. As previously mentioned, FED. R. CIV. P. 26(e) requires a party to supplement discovery responses. During discovery, in response to Attica's Interrogatory No. 10. "Identify all steps You have taken to avoid infringement of the '724 patent," Linear simply responded, "[t]here is no infringement to avoid." Therefore, under FED. R. CIV. P. 37(c), Attica argues that Linear has waived any such claim and should not be allowed to offer additional testimony on this matter at trial. Linear's Response indicates that it stands by its previous answer–and in doing so seemingly admits that it took no steps to avoid infringement. The Court will grant Attica's Motion *in Limine* that the Court preclude Linear from presenting evidence showing that it took steps to avoid infringement upon learning of the Patent.

11

### 9.    Preclude Linear from Arguing to Construe "Non-conforming" as "Defective"

Attica's ninth Motion *in Limine* seeks to have the Court preclude Linear from arguing that a "non-conforming" work piece is a defective work piece. As previously discussed in regards to Attica's third Motion *in Limine*, Linear has now unsuccessfully raised this same argument three times before this Court. During claim construction, in response to Linear's Motion for Reconsideration, and in Plaintiff's Motion for Summary Judgment of Noninfringement, this Court has considered and rebuffed Linear's argument that "nonconforming" should be construed to mean "defective." *See* Dkt. Nos. 60, 69, and 118. Although the Court has yet to make a determination as to what the "ordinary and customary" meaning of the claim terms are, it is clear that the Court has rejected Linear's argument that the ordinary and customary meaning "non-conforming" is defective. *See* Dkt. No. 118. This ruling is the law of the case and the Court will therefore grant Attica's Motion *in Limine* and preclude Linear from departing from it at trial.

### 10.    Exclude the Prosecution History

Attica's tenth Motion *in Limine* seeks to keep Linear from introducing the prosecution history of the Patent at trial. In a patent lawsuit, the prosecution history may be considered to construe claim language, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), to establish prosecution history estoppel if infringement under the doctrine of equivalents were asserted, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 122 S.Ct. 1831 (2002), to establish inequitable conduct, or to establish a defense to willful infringement where the alleged infringer's counsel has reviewed the prosecution history when providing a freedom to practice opinion. *Quantum Corp., et al. v. Tandon Corp.,* 940

12

F.2d 642 (Fed. Cir. 1991), *Spindelfabrik Susessen-Schurr Stahlecker & Grill GmbH v. Shubert & Salzer Machinefabrik AB*, 829 F.2d 1075, 1084 (Fed. Cir. 1987). Attica argues that the information is not relevant under FED. R. EVID. 401-403, as none of these issues will be before the jury.

Moreover, even if the prosecution history was marginally relevant for background purposes, the potential benefits of introducing the prosecution history are greatly outweighed by the danger of unfair prejudice and confusion of the issues. *Magnivision, inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997) (The court vacated a pretrial ruling permitting a defendant to introduce prosecution history to argue that prosecution irregularities rendered the patent invalid. In vacating the ruling, the *Magnivision* court recognized the importance of the court's "gate keeper" role in preventing irrelevant evidence from being introduced at trial).

Linear argues that the prosecution history is admissible because it is considered under the *Georgia-Pacific* factors and because the prosecution history contains statements regarding the scope of the patent. These arguments are unconvincing. As previously stated, Attica's reasonable royalty damages claim is not based on the *Georgia-Pacific* factors, and the time for claim construction has since passed. The Court will preclude Linear from introducing the prosecution history of the Patent at trial.

### 11.   Exclude Settlement Offer

Attica's final Motion *in Limine* moves to exclude a settlement offer made by Attica to Linear in the first month of the pendency of this suit. Under FED. R. EVID. 408, "conduct or a statement made during compromise negotiations" are not admissible at trial. In the first few weeks of this litigation, Attica made a settlement offer to Linear, which was

13

subsequently rejected. Linear argues that evidence pertaining to the offer should be permitted because Attica opened the door to such evidence in its damage computation for *Georgia-Pacific* factor number four where Attica stated:

> Attica Automation offered to negotiate a license with Linear at a reasonable royalty in letters of December 14, 2012 and January 7, 2013. Linear declined to negotiate. As stated in the December 14, 2012 letter, Attica Automation's first preference would be that Linear stop selling its infringing sorting machine.

*See* Dkt. No. 126-3.

Linear's argument fails for numerous reasons. First, Attica is not relying on the *Georgia-Pacific* factors to establish damages. Second, FED. R. EVID. 408 mandates exclusion of any "statement made during compromise negotiations," and Linear does not cite any authority that exempts Attica's settlement overtures from that mandate.  Finally, Linear makes no argument as to why the aforementioned evidence is relevant to prove an element of its claims. Therefore, the Court will grant Attica's Motion *in Limine* to preclude Linear from offering evidence of the settlement negotiations  made between the parties.


### B.    Linear's Motion *in Limine*

#### 1.    Reasonable Royalty Damages Methodology

Linear seeks to preclude the testimony of William Bennett ("Bennett") stating that a reasonable royalty under the patent would be 20% of Linear's sales. *See* Dkt. No. 75-2. Bennett is the owner and president of Attica and has 28 years of experience in purchasing and selling inspection equipment. In seeking to exclude Bennett's testimony, Linear relies on *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012). In

14

*LaserDynamics*, the Federal Circuit rejected the testimony of a reasonable royalty witness to the effect that a 6% base royalty would have been the result of the hypothetical negotiation under *Georgia-Pacific*. *Id.* at 81. The witness based his testimony on other licenses in the industry and on a licencing survey of the royalty rates in general, but did not rely on any other actual licenses in reaching his calculations. *Id.* at 80. Consequently, the *LaserDynamics* court rejected the testimony as arbitrary and speculative. Additionally, the witness had purported to reduce the rate from 6% to 2% to account for the importance of the patented invention to the overall product. *Id.* at 69. The *LaserDynamics* court held that the 2% rate was "plucked out of thin air" because it was not based on any "credible economic analysis." *Id.*

Linear argues that Bennett's testimony is analogous to that of the proffered witness in *LaserDynamics*. However, while the witness in *LaserDynamics* offered some comparative evidence in support of his damages calculation, Linear maintains that Bennett bases his testimony on zero licences from any industry. Therefore, Linear alleges that the 20% is arbitrary and speculative.

Even if Attica uses the analytical approach to calculate reasonable royalty damages, Linear maintains that Bennett's 20% calculation is still improper. As previously mentioned, the analytical method focuses on the infringer's projections of profits or the infringing product, regardless of what the parties might have hypothetically agreed to had they successfully negotiated before the infringement began. *TWM*, 789 F.2d at 899 (Fed. Cir. 1986). Linear argues Bennett's testimony is irrelevant under this methodology as he is not an accountant or damages expert, he has no knowledge of Linear's net profits from sales of the accused machines, and Attica made no pretrial disclosure of any evidence regarding

15

the required subtraction from net profits (industry standards or otherwise) as required under FED. R. CIV. P. 26(a)(1)(A)(iii). (a party must submit, without awaiting a discovery request "a computation of each category of damages...and...documents or other evidentiary material...on which each computation is based").

Alternatively, Attica alleges it intends to show that a 20% reasonable royalty is warranted by relying on evidence of Linear's projected gross profits prior to the initial infringement, less overhead, and the industry standard net profit (about which Bennett is sufficiently knowledgeable to testify). In Defendant's Supplemental Responses to Plaintiff's First Interrogatories to Defendant, *See* Dkt. No. 127-2, Attica put Linear on adequate notice that it potentially intended to seek damages of 20% of the infringing revenue as calculated under the analytical method. *TWM* was cited in support and Attica stated that it reached 20% based on "a reasonable investigation (and not on any confidential financial data of Linear or ND)." Attica's disclosures arguably adequately put Linear on notice of its intended computation of damages. Moreover, if Linear felt the information was insufficient, it could have moved for Attica to supply additional documentation earlier, rather than waiting until right before trial is set to begin. Attica filed its supplemental responses on February 24, 2014–nearly six months ago.

### 2.    *AVM Technologies*

Linear further seeks support from the court's ruling in *AVM Tech. LLC v. Intel Corp.*, 927 F. Supp. 2d 139 (D. Del. 2013). In *AVM*, the court concluded that an inventor could not testify "concerning damages beyond facts and information within his personal knowledge." *Id.* at 142. Specifically, the inventor was precluded from testifying about any speculative or hypothetical negotiations. According to Linear, the *AVM* court cited Federal Circuit

16

precedent that "[r]easonable royalty 'calculations are the province of expert analysis.'" *See* Dkt. No. 120 (citing *AVM*, 927 F. Supp. 2d at 146). Consequently, Linear argues that Bennett, who has no licensing expertise or experience, should be precluded from testifying regarding a 20% reasonable royalty.

However, as in its response to Attica's sixth Motion *in Limine*, Linear's quotation is incomplete and taken out of context. The full cite is as follows:

> Much of [the inventor of the patent in suit,] Tran's [,] proffered testimony would be improper expert opinion, including, for example, an analysis of the estimated costs that "Intel necessarily would have incurred to avoid the '547 patent" (D.I. 257 at 8); the calculation of a "per design technology use" fee that Intel would pay for each different product design using the '547 patent (*id.* at 3-4); a multiplication factor to apply to the per design technology use fee (*id.* at 4); and a final damages number based on the application of the adjusted and discounted per design technology use fee to the number of product designs (*id.* at 12). These calculations are the province of expert analysis.

*Id.* The aforementioned language, considered in context, does not establish a *per se* rule that reasonable royalty calculations must be based on expert analysis. Instead, it limits the Court's holding to the four specific calculations preceding it–none of which are offered by Bennett in the instant case.

Both *AVM* and its cited *Veritas Operating Corp v. Microsoft Corp.*, No. 2:06-cv-00703-JCC, 2008 WL 657936, *10 (W.D. Wash. Jan. 17, 2008) (a lay witness may not offer an opinion on ultimate patent damages, "including determining a reasonably royalty"), calculate damages under the *Georgia-Pacific* Hypothetical Approach. A law witness may not testify to events that "would have occurred," but may testify to facts within his personal knowledge. Therefore, Bennett will be permitted to testify as to his personal knowledge that calculates reasonable royalty damages as 20% (i.e. his personal knowledge as to what he believes Attica's profit levels to be and what he believes Linear's profit to be from the

17

"Strande lawsuit"). Linear will have the opportunity to cross examine Bennett and question the weight of his argument.

###    C.    Attica's Motion to Realign the Parties

Attica moves to realign the parties, i.e., to place the patentee Attica in the place of the plaintiff, and the accused infringers, Linear and ND in the place of defendants. Attica argues that such a realignment would result in a logical re-ordering of proofs at trial.

In *Medtronic, Inc. v. Mirowski Family Ventures, LLC* , 134 S.Ct. 843 (2014), the Supreme Court held that the patentee always has the burden of proof in an action for a declaratory judgment involving infringement of a patent. *Id.* at 849 ("[t]he burden of persuasion is with the patentee, just as it would be had the patentee brought an infringement suit"). In the instant case, Attica is the proof-burdened party, and Linear and ND are the accused infringers. The Supreme Court further emphasized that its holding was unaffected even if the patent suit was commenced as a declaratory judgment action by a putative infringer. *Id.* at 849. On July 11, 2014, this Court dismissed  Linear's challenge to the validity of Attica's patent on summary judgment. *See* Dkt. No. 118. This removed the only claim on which Linear was the proof-burdened party. Although Linear's claim for patent invalidity is currently pending a motion for reconsideration, as further explained below, that motion is denied. Linear and ND have pleaded no other affirmative defenses. *See* Dkt. No. 10.

There is ample case authority for the custom of realigning parties in a patent case commenced as a declaratory judgment action by the accused infringer. *See Delphi Corp. v. Automotive Tech., Inc.,* No. 08-cv-11048 (E.D. Mich. Sept. 25, 2008) (Judge Cleland's order realigning parties in a patent suit); *Dishman v. Am. Gen. Assurance Co.*, 193 F. Supp.

2d 1119, 1128 (N.D. Iowa 2002). Because Linear's pending Motion for Reconsideration is being denied, Linear and ND have no objections to the realignment of the parties, as long as the jury is informed that Linear commenced this action for a declaration of noninfringement, and that the parties have subsequently been realigned by the Court. Therefore, the Court will realign the parties.

### D. Linear's Motion for Partial Reconsideration

On July 11, 2014, this Court entered an Order granting in part and denying in part Linear's Motion for Summary Judgment of Noninfringment and striking part of the second declaration of James DeFillipi. Linear now moves for partial reconsideration of this Court's July 11, 2014.

Local Rule 7.1(g)(3) of the Local Rules of the United States District Court for the Eastern District of Michigan provides:

> [M]otions for rehearing or reconsideration which merely present the same issues ruled upon by the court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

E.D. Mich. L.R. 7.1(g)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain." *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (citing *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)). "[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith ex rel. Smith v. Mount Pleasant Pub. Sch.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

Contrary to Linear's argument, this Court was not mislead by Attica's statement that

19

"something is activated," nor did the Court erroneously rely on the Linear video in denying Linear's Motion for Summary Judgment of Noninfringment. Furthermore, and in regards to the DeFillipi declaration, Linear has failed to demonstrate a palpable defect by which this Court has been mislead, the correction of which will result in a different disposition of this case.

The Court will deny Linear's Motion for Partial Reconsideration as to its determination that there is a genuine issue of material fact as to Linear's noninfringment of the patent and its decision to strike the second DeFillipi declaration pertaining to invalidity.

## IV.   CONCLUSION

Based on the facts above, the Court will GRANT IN PART and DENY IN PART Attica's Motions *in Limine* (Nos. 1-11) [#119], DENY Linear's Motion *in Limine* to Preclude William Bennett Testimony Regarding Reasonable Royalty Damages [#120], GRANT Attica's Motion to Realign the Parties [#121], and DENY Linear's Motion for Partial Reconsideration [#122].

SO ORDERED.


Dated:  August 25, 2014

/s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE




CERTIFICATE OF SERVICE

20

Copies of this Order were served upon attorneys of record on
August 25, 2014, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk